HARDY, Judge.
This action was instituted by plaintiff for the expropriation of a right-of-way across lands owned by defendants located in Red River Parish, Louisiana. The case was tried on the merits but, before conclusion of the trial, defendants filed an exception of no right and no cause of action. The exception was overruled, and there was judgment for plaintiff, from which defendants have appealed.
Plaintiff, after failing to negotiate a private agreement with defendants for the acquisition of a right-of-way across the property described brought this suit to expropriate a right-of-way one hundred feet in width for the purpose of erecting thereupon a 138 KV line for the transmission of electricity from a point approximately four miles north of Coushatta in Red River Parish to a point in or near the Town of Mansfield in De Soto Parish, where an electric substation was under construction.
The exception of no cause or right of action which was filed on behalf of defendants is based upon the following contention as set forth by counsel for defendants in brief before this court:
“ * * * plaintiff had founded its right to exercise eminent domain and to expropriate a right of way over defendant’s (sic) land on the fact that it was created for the purpose of developing and transmitting electricity for power, lightening (sic), heating and other uses, when the charter as filed in the record failed to authorize this right to develope (sic) and transmit electricity for power, lightening (sic), heating and other uses, and further because the charter authorized the plaintiff to engage in business which was purely private in nature and that, therefore, it was not authorized to expropriate land for its uses.”
The charter of plaintiff corporation, which was introduced in evidence on trial of the case, sets forth the following pertinent provisions with reference to the objects and purposes, inter alia, for which the corporation was organized, as follows:
“To construct * * * maintain and operate * * * electric light and power plants and systems * * *.
s¡s Ht sjt
“ * * * to produce, manufacture, own, sell or otherwise dispose of, furnish, deal in and supply, * * * electricity, * *
The argument advanced by learned counsel for defendant that the articles of incorporation failed to “include any provision for the development and transmission of electricity for power, lighting, heating and such other uses, * * * ” is completely untenable in view of the quoted extracts *525 from the charter provisions. Such a construction would lead to the absurd and ridiculous conclusion that a corporation organized for the purpose of selling and dealing in electricity is not authorized to transmit such commodity. The above quoted extracts from the charter in themselves serve to dispose of this argument adversely to defendant’s contention.
Next it is urged on behalf of defendants-exceptors that the corporation does not possess the right of expropriation because it is organized for the purpose of carrying on private business. The burden of counsel’s argument on this proposition appears to be that plaintiff corporation is a business entity which was organized for multifarious purposes and because its activities are not restricted to a single purpose charged with the public service, it is therefore precluded from the exercise of the rights of expropriation. Counsel relies upon and quotes extensively from Louisiana Navigation & Fisheries Co. v. Doullut, 114 La. 906, 38 So. 613, 615.
Reference to the cited case convinces us that it cannot be considered as authority for the proposition submitted, and, indeed, we do not think it is authority for any legal principle. The pronouncements of the court to which counsel refers were developed in the opinion of the court on original rehearing. A rehearing was granted and in the course of the opinion on rehearing Mr. Justice Land made this observation:
“Certain expressions in our former opinion relative to multifarious corporations seem to have aroused the fears of such institutions throughout the state as to their legal status. These expressions were used arguendo, and should not be considered as authoritative.”
On rehearing the case was remanded to permit the consideration of questions with reference to the legal effect and constitutionality of Act 120 of 1904, having for its purpose the confirmation and validation of charters, acts and contracts of corporations organized for the purpose of carrying on several branches of business, etc. The act in question had been passed by the legislature after trial of the case but before final action by the Supreme Court on the appeal.
The constitutional authority for the exercise of the right of expropriation is found in Article 1, Section 2 of the Constitution of 1921, which provides that:
“ * * * private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid.”
LSA-R.S. 19:2 (9) specifically authorizes the expropriation of needed property by
“Any domestic or foreign corporation created for the purpose of developing and transmitting electricity for power, lighting, heating, or other such uses.”
The General Business Corporations Act, as set forth in LSA-R.S. 12:1 et seq., clearly authorized the organization of corporations for multifarious purposes.
There is nothing inconsistent in the organization and operation of a corporation for private profit which comprehends in its purposes both purely private enterprises and engagements and other operations which are chargeable with a public interest, a public service and, consequently, a public use. In other words, we consider that the right of expropriation is dependent not upon the public character and nature of the corporation but upon the public purposes and public interests which are served by such corporation. These purposes and interests may result as well from the very nature and use of the products handled by the corporation as from any other source. It scarcely needs observation that the production, manufacture, transmission and *526 sale of electricity or gas or any other source of power designed for use by the general public, is a legitimate function and purpose of a private business corporation. The fact that such a corporation engages in other activities such as the manufacture, and sale of ice, the sale of coal, refrigerators, stoves, heating and cooling equipment, etc., is entirely beside the point. In our opinion this issue was directly passed upon and resolved by the Supreme Court in Calcasieu & S. Ry. Co. v. Bel, 224 La. 269, 69 So.2d 40.
It follows that the exception was properly overruled.
On the merits counsel for defendants complains of error with respect to the judgment below in that plaintiff was allowed an extension of the servitude across lands which were not incorporated in the description of the property sought to be expropriated and, further, counsel asserts error in that the judgment did not make allowance in favor of defendants for alleged severance damages caused by the expropriation.
The first contention is based upon the proposition that plaintiff’s petition sought the expropriation of a right-of-way or servitude 100 feet in width over and across the lands of defendants for a total distance of 1,223 feet, whereas the judgment decreed the expropriation of the property extending 50 feet on each side of a center line described as running over and across the lands of defendants for a total distance of 1,283 feet.
The discrepancy of 60 feet developed on trial of the case when it was discovered that plaintiff’s engineers had failed to extend the line of the proposed right-of-way to the center of Honey Bayou which marked the western-most bound of defendants’ property. This error resulted in a 60 foot gap between the 1,223 foot distance, specifically described in plaintiff’s petition by metes and bounds, and the requisite 1,283 foot distance that would have carried the line to the boundary of defendants’ lands. The trial judge noted in his memorandum of reasons for judgment that the additional 60 feet was included under the allegations of Article 5 of plaintiff’s petition and under the prayer thereof for general relief. We think this conclusion was correct. Reference to Article 5 discloses that plaintiff alleged the need of crossing property described as
W Yz of SW 54 of Section 6, Township 12 North, Range 10 West, Louisiana Meridian, and situated in Red River Parish, Louisiana.
The fact that the location of the proposed KV line was exactly set forth in the following article of plaintiff’s petition for a distance of 1,223 feet does not detract from the necessity of crossing the property described by government subdivision in the preceding article to which we have referred. In the light of the allegations of Article 5 we think the prayer for general relief clearly justified the allowance of the extension of the right-of-way. We cannot conceive of any prejudice to defendants, nor has any been asserted. The only possible effect of an amendment of the judgment by disallowing the 60 feet extension would be to necessitate the bringing of another suit of the same nature and character, which could not possibly involve any issues of fact or law not comprehended and disposed in the instant case. To our minds, this would be the nature of super-technical legalism which is reprobated by modern principles of procedure.
With respect to the allowance of severance damages, it is noted that the district judge fixed the compensation to be paid for the land actually taken for the use of the right-of-way, amounting to slightly less than three acres, upon the basis of $150 per acre, and additionally awarded the sum of $80 representing loss of timber along the strip to be cleared for the right-of-way.
*527 Under the testimony in the instant case we think these allowances were most generous, but it is true that no consideration appears to have been given to defendants’ claim for damages resulting from the severance of their lands by the granting of the right-of-way and the erection of the high voltage lines across the same. We think defendants’ claims have some merit on this point, although we are convinced that such damages as are fixed should be nominal. The testimony shows that the use of the right-of-way for the construction of the high line would only necessitate the erection on defendant’s property of two sets of two poles, each of which would be approximately 65 feet in height and 18 inches in diameter at the base. According to the testimony of plaintiff’s engineer the wires would be strung on cross arms located about 6 feet below the tops of the poles. It is evident that the structures would occupy little of the surface of the land, and the record does not indicate that the construction would cause any substantial damage to the use of the property. The land in question is located some four or five miles from the nearest highway and is, as we appreciate the facts, well removed from any nature of development which would indicate the possibility of damage by reason of the alleged severance effect of the use of the right-of-way for the purposes intended. Due to the failure to establish any real probability of damage which might result from such severance in the foreseeable future, we think an allowance of $250 would be not only adequate but generous under the circumstances.
For the reasons assigned the judgment appealed from is amended by increasing the principal sum to be paid to the defendants by the plaintiffs to the amount of $780, and as amended the judgment appealed from is affirmed, at plaintiff’s cost.