ELLIS, Judge.
These are expropriation suits brought by a public utility for the purpose of acquiring a right-of-way and easement for the location of an electric line over and across certain property owned by the defendants.
Several exceptions were filed and the constitutionality of Act No. 325 of 1948, LSA-R.S. 19:1 et seq., was attacked. However, these were disposed of by stipulations, which agreed that plaintiff should be entitled to the right-of-way and easement, and consequently all were overruled.
This stipulation further agreed that for the purpose of construction, maintenance, repair and right of ingress to and egress from the transmission lines, the right-of-way shall be limited to a width of 15 feet on either side of the center line thereof, and that the company shall have the additional right to trim or remove trees or other obstructions for a distance of 50 feet on either side of the center line of said right-of-way. Further, that the right to construct and maintain poles on the property of the defendants shall be limited to the number of poles stated in the petition in each case, to-wit: Lee Wimberley et al. 9 poles; Edna Castille Lavergne et al. 2 poles; Thomas McBride et al. 2 poles; And that the location of such poles shall be and remain the same as plotted on the plats annexed to the petitions that the transmission line will consist of but a single line of poles, with crossarms at the top thereof, and with wire suspended therefrom, and that there will be no guy wires or other appurtenances located on the surface of defendants’ properties.
This agreement further provided that in the Lavergne suit there is a barn located approximately 6 feet from the center line of the right-of-way which 'bam will be removed from the right-of-way area and the defendant entitled to compensation for the cost of removal and relocation of the said barn. A similar stipulation was entered into with regard to another barn located without the right-of-way area in the Wimberly suit.
The stipulation contained a provision that the only issue to be tried in these cases was the matter of 'compensation for the right-of-way taken and damages caused thereby; that the three causes would be consolidated for the purposes of trial and that separate judgments be rendered in each case.
After hearing the evidence the Court below rendered judgment fixing the value of the right-of-way at $100 per acre for the total area within the 30 foot right-of-way, plus $50 per acre for the total area outside the 30 foot right-of-way, but within 50 feet on either side of the center line *544 of the right-of-way, plus an additional sum of $50 per pole for each pole located on the property of the defendants.
Accordingly, in the Lavergne suit the value of the right-of-way amounted to $286. The Court allowed damages in the amount of' $450 for moving and relocating the barn and an additional sum of $200 as damages" for the loss of tillable acreage. A separate judgment was rendered in this suit awarding the defendants the sum of $936.
In the Wimberly suit the value of the right-of-way amounted to $1028. Damages were awarded in the amount of $175 as the cost of removing and relocating a barn from the right-of-way area. Accordingly, judgment was rendered awarding the defendants in this suit $1,203.
In the McBride suit, the value of the right-of-way amounted to $265, and as there was no award for damages here, the judgment was rendered in the amount of $265.
Plaintiff was condemned to pay all Court costs in each of the three cases, and has appealed from all of the judgments, maintaining that the amount awarded for the value of the right-of-way is excessive, and that the defendant in the McBride suit should have been assessed with all costs therein as plaintiff attempted an amicable settlement with McBride by. making him a fair offer in good faith, but that he refused to consider any amount less than $500, and as the District Court awarded him a much smaller amount the costs should be assessed against him.
In. the Lavergne suit, Edna Castille La-vergne and the other defendants answered the appeal, maintaining that the judgment in that suit should be amended by increasing the amount allowed to a greater sum as the costs allowed for dismantling and reconstructing the barn was not sufficient.
In the Wimberley suit the defendants answered the appeal praying the judgment rendered therein be increased to the amount claimed in the answer filed, or to the sum of $5,900,
In each of these cases the property over which the rights-of-way and easements are sought are used for’ agricultural purposes, presently being planted in crops of either rice, cotton, corn or sweet potatoes. They are located in a rural area adjacent to a dirt road in St. Landry Parish.
Our Supreme Court in American Tel. & Tel. Co. v. East End Realty Co., Inc., 223 La. 532, 66 So.2d 327, 329, has stated:
“The law is well settled that the amount due for private property expropriated for public purposes is its market value when taken, that is, the fair value between one who wants to purchase and one who wants to sell, under ordinary and usual circumstancen, plus any damage caused by such taking, which includes damage to abutting property. La.Const., Art. 1, § 2; see Louisiana Highway Commission v. Israel, 205 La. 669, 17 So.2d 914, and numerous cases cited therein.”
Applying, this rule, it would seem from the evidence that the value set by the trial court for acreage is reasonable and proper. However, there does not seem to be any justification for the awards of $50 per pole for the poles to be erected on the various rights-of-way.
The plaintiff introduced the testimony of a real estate broker of St. Landry Parish who estimated the value of the land sought, to be from $75 to $150 per acre. Also plaintiff introduced the evidence of a farmer who owned some 256 acres of land located not far distant from the properties involved. He stated that if he could get $150 per acre for his property he would gladly sell. Plaintiff also introduced evidence of payments for similar rights-of-way in the vicinity.
On the other hand the defendants offered testimony establishing a considerably higher value. A store operator close to the property expressed the opinion that such property was worth some where between *545 $250 and $300 per acre. Another witness was introduced by the defendants who testified that he had recently purchased approximately 32 acres in the .vicinity for $8,000, and a one acre plot adjoining this tract for $400. This property was located on a paved highway. Another witness testified he had recently purchased 3 acres for a consideration of $1,500.
In rebuttal, the plaintiff introduced a deed 'by which property involved in this litigation had been sold for approximately $150 per acre. This deed was dated in March of 1947. Also, in rebuttal, a succession proceeding was introduced wherein some of the property involved was inventoried at approximately $75 per acre. Also in the Wimberley suit by way of rebuttal, two deeds were introduced dated in February of 1949 whereby some of the property involved was sold for a consideration of approximately $40 per acre.
This rebuttal testimony is of little value as the deeds were drawn some time ago and consequently would not reflect the. true value as of today. Ordinarily the appraisal of property in succession proceedings does not represent the true value.
The testimony as to the prices paid by the plaintiff for rights-of-way across similar property nearby is not controlling, in our opinion, as there is some conflict as to the similarity of the rights granted therein to the rights-of-way in the present suits, and as stated in the American Tel. & Tel. Co. case, supra, these present no absolute proof of the value of the servitude. In the cited case the record provided no other gauge by which to fix the value.
There was one barn on the Wim-berley property and one on the Lavergne property, which it was necessary to move and relocate. In the Wimberley case the trial court .warded the sum of $175 damages, this figure being based upon testimony as to reasonable costs of-moving and relocating this structure. In the Lavergne case the testimony is rather indefinite, but the conclusion of the Trial Court that $200 should be awarded as damages for the loss of tillable acreage and the sum of $450 for moving the structure, seems reasonable.
Plaintiffs contention that the cost in the McBride case should be taxed against the defendant is, we. think, without merit. It cites the case of American Tel. & Tel. Co. of La. v. Maguire, 219 La. 740, 54 So.2d 4, as authority for its argument. This case states that Article 2638 of the LSA-Civil Code declares that the costs in expropriation proceedings may be taxed against the owner where there has been a tender of the true value of the land. The Supreme Court, citing Louisiana Highway Commission v. Bullis, 197 La. 14, 200 So. 805, affirmed the decision of the trial court in assessing costs' against the defendant since the testimony showed the defendant was steadfast in his position and would not accept any sum of money to grant the’ right-of-way. In such a circumstance the Court found a tender was not essential since it would be of no avail. In the present case, it is true McBride refused any offer less than $500 for the right-of-way across his property when an agent of the plaintiff attempted to negotiate with him for the acquisition of the right-of-way involved. This offer made by the plaintiff was less than the true value of the land expropriated, as found by the District Court. Consequently, there was no tender of the true value, and thus the defendants should not be cast in costs.
Concerning the poles, there is no evidence in this record to show that the placing of poles upon the rights-of-way would cause any damage whatsoever to the abutting property. Once having acquired the rights-of-way the owners of these serv-itudes would have the right to erect thereon the poles in question without the payment of any additional consideration.
' For the above and foregoing reasons the judgments of the District Court are amend-' ed in each case by reducing the amounts thereof by' $50 for each pole to be erected on the rights-of-way. The appellees to pay costs of this appeal, all other costs to be paid by the appellant.